Randal F. BLACK, C.O. Daniel and Lisa Jeanine Sudderth, Petitioners,

v.

VICTORIA LLOYDS INSURANCE COMPANY, Respondent.

No. C–8805.

Supreme Court of Texas.

Sept. 12, 1990.

Rehearing Overruled Nov. 14, 1990.

W. James Kronzer, Mary Jensen, Kathlyn A. Knobloch, Jimmy Williamson, Houston, for petitioners.

Michael C. Neel, Charles Seymore, Mark D. Wilson, Houston, for respondent.

## OPINION

HIGHTOWER, Justice.

This summary judgment case involves the issuance of an insurance "identification card" pursuant to article 6701h of the Revised Civil Statutes of Texas to a statutorily exempt "owner" whose liability insurance policy excluded coverage when the vehicle was not being used exclusively for business. After an accident which occurred while Lisa Jeanine Sudderth (Sudderth) was using the vehicle on a personal

matter, Respondent Victoria Lloyds Insurance Company (Victoria Lloyds) denied coverage. Petitioners Randal F. Black (Black), C.O. Daniel (Daniel) and Sudderth filed suit and asserted several causes of action against Victoria Lloyds and others. Victoria Lloyds filed a motion for summary judgment asserting that there was no misrepresentation as a matter of law, that there was no insurance coverage for the accident and that Black and Sudderth had no standing. The trial court granted Victoria Lloyds' motion for summary judgment and rendered judgment against Black, Daniel and Sudderth. The court of appeals affirmed. 769 S.W.2d 949. For the reasons explained herein, we reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings.

The issues before this court are (1) whether there are genuine issues of material fact concerning misrepresentation of the liability insurance coverage for personal use which preclude summary judgment, (2) whether there are genuine issues of material fact concerning waiver of the policy's permissive personal use exclusion which preclude summary judgment and (3) whether Victoria Lloyds' motion for summary judgment failed to address all of the asserted causes of action.

In 1982, Daniel and Statewide Trucking, Inc. d/b/a Wood Brothers Transfer, Inc. (Wood Brothers) entered into a "lease" arrangement in which Daniel "leased" his pickup truck to Wood Brothers for Daniel's use in conducting Wood Brothers' business. Wood Brothers purchased a policy of liability insurance from Victoria Lloyds which met the requirements of article 911b of the Revised Civil Statutes of Texas for Daniel's truck. The policy excluded coverage "while the automobile is not being used exclusively in the business of the named insured and over a route the named insured is authorized to serve by federal or public authority...." Wood Brothers deducted the amount of the insurance premiums for Daniel's pickup truck from Daniel's pay checks. Daniel did not request or receive a copy of Wood Brothers' insurance policy prior to the accident.

After proof was furnished to the Texas Railroad Commission that Wood Brothers carried the minimum liability insurance required by article 911b, the Railroad Commission issued a motor carrier permit or certificate to Wood Brothers.[1] The permit or certificate, known as a "cab card," was delivered to Daniel to be carried in his pickup truck as proof of compliance with article 911b.

Pursuant to article 6701h of the Revised Civil Statutes of Texas, Victoria Lloyds issued insurance cards to Wood Brothers for distribution to all of its drivers including the drivers of its "leased" vehicles. Daniel received a Victoria Lloyds' insurance card [2]

---

[1]. To receive a permit or certificate of public convenience and necessity under article 911b, a motor carrier must file bonds and/or insurance policies with the Texas Railroad Commission. The bonds and/or insurance policies must provide that the obligor will pay—to the extent of the face amount of the bonds and/or insurance policies—all judgments which may be recovered against the motor carrier based upon various claims and arising out of the actual operation of the motor carrier. TEX.REV.CIV.STAT.ANN. art. 911b, § 13 (Vernon 1964).

[2]. The insurance card provided:

(FRONT)

Victoria Lloyds
Houston, Texas
IDENTIFICATION CARD
Policy Number GLA 0550     Expires 1/20/83
Insured  1) Wood Brothers Transfer, Inc.
         2) Statewide Trucking
            2410 Commerce
            Houston, Texas 77003
Agent    SUMMIT GENERAL AGENCY, INC.

(BACK)

THIS POLICY COMPLIES WITH THE COMPULSORY AUTO LAWS OF THE STATE OF TEXAS

from Wood Brothers. This insurance card was a separate and distinct card which was also to be carried in Daniel's pickup truck. There is no indication in the insurance card that Daniel does not have liability insurance coverage for personal use of his pickup truck. The insurance card does not state that the coverage was limited to the use of the vehicle for business purposes only. In addition to the deduction of the premiums for insurance required by article 911b, Wood Brothers also deducted the amount of insurance premiums for medical and hospitalization insurance for Daniel and his family and for worker's compensation insurance for Daniel and other drivers of his pickup truck. However, since Wood Brothers did not purchase a policy of collision insurance which would cover Daniel's pickup truck, Daniel purchased a collision insurance policy from another source.

In October, 1982, Sudderth, Daniel's daughter, was involved in an accident with Black while driving her father's pickup truck on a personal matter. After Victoria Lloyds denied coverage, Black sued Sudderth, Daniel, Wood Brothers and Victoria Lloyds. After realignment of the parties and severance of a portion of the lawsuit,[3] Black, Sudderth and Daniel asserted causes of action against Victoria Lloyds for breach of contract, violations of the Texas Deceptive Trade Practices—Consumer Protection Act (DTPA) and section 21.21 of the Texas Insurance Code (including rules and regulations promulgated by the State Board of Insurance), negligence, gross negligence, fraud and breach of duty of good faith and fair dealing. Victoria Lloyds filed a motion for summary judgment asserting that there was no misrepresentation as a matter of law, that there was no insurance coverage for the accident and that Black and Sudderth had no standing. The trial court granted the motion for summary judgment. The court of appeals affirmed, holding that issuance of the insurance card cannot constitute a misrepresentation as a matter of law, that Sudderth and Black could not claim "persons injured" status under section 16 of article 21.21 of the Insurance Code, that there was no insurance coverage on the occasion in question and that there was no negligence or bad faith.

## I.

■ Black, Sudderth and Daniel argue that there are genuine issues of material fact concerning misrepresentation of the liability insurance coverage for personal use which preclude summary judgment. We agree.

The standards for reviewing a motion for summary judgment are well established. The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

IF YOU HAVE AN AUTOMOBILE ACCIDENT
1. Stay calm. DO NOT leave the scene.
2. Do not discuss the accident with anyone but the police or an authorized representative of Victoria Lloyds.
3. Be sure to obtain: The owner and driver's name, address, license number, both plate and driver's license number, their insurance company, name and address of injured persons and extent of injury and witnesses' names and addresses.
4. Write down the details.
5. As soon as possible, notify your agent or the Insurance Company, 1–713/527–0444, 3131 W. Alabama, Houston, Texas 77098.

**3.** After Black filed suit, Sudderth and Daniel filed a cross-action against the other defendants. The parties were realigned and the cross-action was severed so that Black, Sudderth and Daniel were aligned against Wood Brothers and Victoria Lloyds. Eventually, Wood Brothers was nonsuited. The auto collision case against Sudderth and Daniel proceeded to trial and a jury awarded Black judgment against Sudderth. This cause consists of the "cross-action" against Victoria Lloyds.

*Continental Casing Corp. v. Samedan Oil Corp.*, 751 S.W.2d 499, 501 (Tex.1988).

Article 6701h requires that no motor vehicle may be operated in Texas "unless a policy of automobile liability insurance in at least the minimum amounts to provide evidence of financial responsibility ... is in effect...." TEX.REV.CIV.STAT.ANN. art. 6701h, § 1A (Vernon Supp.1990). *"[E]very owner and/or operator*[4] *...* shall be required, as a condition of driving, to furnish, upon request, evidence of financial responsibility to a law enforcement officer ... or to another person involved in an accident." TEX.REV.CIV.STAT.ANN. art. 6701h, § 1B (Vernon Supp.1990) (emphasis added). Satisfactory evidence of financial responsibility includes a "written instrument" issued by a liability insurer stating the name of the insurer, the insurance policy number, the policy period, the name of the insured and the policy limits or *a statement that the coverage of the policy complies with the required minimum amount of liability insurance. Id.* Proof of financial responsibility is defined as "[p]roof of ability to respond in damages for liability, on account of accidents ... arising out of the ownership, maintenance or use of a motor vehicle...." TEX.REV. CIV.STAT.ANN. art. 6701h, § 1(10) (Vernon Supp.1990).[5]

Black, Sudderth and Daniel assert that the article 6701h insurance card *together with* Daniel's opposing summary judgment affidavit raise a fact issue concerning misrepresentation of the liability insurance coverage provided by Victoria Lloyds for the drivers of Wood Brothers' leased vehicles. It is undisputed that the insurance card was the only representation made by Victoria Lloyds to Daniel concerning the scope of insurance coverage. The insurance card given to Daniel by Wood Brothers simply states: "THIS POLICY COMPLIES WITH THE COMPULSORY AUTO LAWS OF THE STATE OF TEXAS." Nothing in the insurance card or the requirements of article 6701h distinguishes between liability insurance for business or personal use. The insurance card does not restrict liability insurance coverage to business use or exclude personal use. It gives no indication that Daniel does not have liability insurance coverage for personal use of his truck. For example, the insurance card does not state that it only applies when the truck is used *for business purposes only.*[6] Furthermore, there is no indication on the insurance card or otherwise that Daniel was exempt from the requirements of article 6701h.

In response to Victoria Lloyds' motion for summary judgment, Black, Sudderth

---

**4.** Section 1(8) of article 6701h defines "owner" as

A person who holds the legal title of a motor vehicle, or in the event a motor vehicle is the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor shall be deemed the owner for the purposes of this Act.

TEX.REV.CIV.STAT.ANN. art. 6701h, § 1(8) (Vernon Supp.1990). Section 1(7) of article 6701h defines "operator" as "[e]very person who is in actual physical control of a motor vehicle." TEX.REV.CIV.STAT.ANN. art. 6701h, § 1(7) (Vernon Supp.1990).

**5.** However, any motor vehicle subject to section 13 of article 911b is exempt from the requirements of section 1A of article 6701h. TEX.REV. CIV.STAT.ANN. art. 6701h, §§ 1A, 33 (Vernon 1977 & Supp.1990). Daniel, as an operator of a leased truck, had insurance coverage as required by section 13 of article 911b, but was exempt from the requirements of article 6701h.

**6.** The dissent invites the Court to speculate concerning fact scenarios under which Victoria Lloyds might be entitled to summary judgment. For example, what if Victoria Lloyds added a statement to the insurance card such as "Not Valid for Personal Use" or "See policy for details" or what if Victoria Lloyds had given Daniel the entire policy? In addition, the dissent invites the Court to advise Victoria Lloyds what it should do to be entitled to summary judgment on remand. For example, "[i]f Victoria Lloyds should have done something more or different, the Court should say so" and the Court should "explain how summary judgment could be granted." Page 29–30 (Hecht, J., dissenting). For obvious reasons, we decline to consider fact scenarios not before the Court or to advise Victoria Lloyds on what it should do on remand to be entitled to summary judgment.

and Daniel pleaded that the issuance and contents of the insurance card were false and misleading and submitted Daniel's affidavit which stated that (1) it was his understanding from his conversations with Wood Brothers, the payment of premiums, and from the insurance card issued by Victoria Lloyds, that the liability insurance policy he purchased would cover accidents involving his truck whether it was being used for business or personal use, (2) he was aware that Texas law required him to have liability insurance on his truck for personal and business use and he believed that the information on the insurance card confirmed his prior understanding from Wood Brothers that he was purchasing liability insurance for personal as well as business use, (3) it was his purpose in purchasing liability insurance to obtain liability coverage for the vehicle whether it was used for business or personal use as required by the "new auto law" (i.e., article 6701h), (4) because of Victoria Lloyds' misrepresentation that "complete liability insurance" had been provided, he did not purchase any other liability insurance on the truck, and (5) if he had been informed that personal use of the truck was not insured, he would have purchased additional insurance to provide coverage for personal use as required by law.

Although Daniel lacked liability insurance coverage for personal use of his truck, his insurance card was sufficient evidence of financial responsibility to have complied with the requirements of article 6701h.[7] Undoubtedly, presentment of the insurance card to a law enforcement officer would indicate that the operator of the truck has "a policy of automobile liability insurance in at least the minimum amounts to provide evidence of financial responsibility ... to insure against potential losses which may arise out of the operation of that vehicle." TEX.REV.CIV.STAT.ANN. art. 6701h, § 1A (Vernon Supp.1990). We find that the combined effect of the issuance and contents of the insurance card *and* Daniel's affidavit raises a fact issue concerning misrepresentation of the liability insurance coverage for personal use. As a result, we hold that there are issues of material fact concerning misrepresentation which preclude summary judgment.[8]

## II.

■ Black, Sudderth and Daniel argue that there are genuine issues of material fact concerning waiver of the policy's permissive personal use exclusion which preclude summary judgment. We agree.

The general provisions of the insurance policy provided coverage for persons using or operating an owned or hired automobile with the permission of the named insured.[9]

**7.** Section 1(10) of article 6701h in effect at the time of the accident defined "proof of financial responsibility" as follows:

Proof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of said proof, arising out of the ownership, maintenance or use of a motor vehicle, in the amount of Ten Thousand Dollars ($10,000) because of bodily injury to or death of one person in any one accident, and, subject to said limit for one person, in the amount of Twenty Thousand Dollars ($20,000) because of bodily injury to or death of two (2) or more persons in any one accident, and in the amount of Five Thousand Dollars ($5,000) because of injury to or destruction of property of others in any one accident.

TEX.REV.CIV.STAT.ANN. art. 6701h, § 1(10) (Vernon 1977).

**8.** The dissent states that the effect of the Court's opinion is, among other things, that no claim against an insurance company, no matter how frivolous, may ever be dismissed by summary judgment and that summary judgments against plaintiffs who sue insurance companies are abolished. Page 30 (Hecht, J., dissenting). Contrary to the dissent's conclusions, the Court determined that under the facts and circumstances in this case, there are genuine issues of material fact which preclude summary judgment. The Court has *not* abolished summary judgments against plaintiffs who sue insurance companies or determined that no claim against an insurance company may ever be dismissed by summary judgment.

**9.** The "Persons Insured" provision of the insurance policy provides in pertinent part as follows:

Each of the following is an insured under this insurance to the extent set forth below:

\* \* \* \* \* \*

(c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating)

However, several endorsements[10] to the insurance policy altered the general provisions to exclude coverage "while the automobile is not being used exclusively in the business of the named insured and over a route the named insured is authorized to serve by federal or public authority...." This is the "permissive personal use exclusion." Black, Sudderth and Daniel assert that the issuance and contents of the insurance card raise fact issues concerning whether Victoria Lloyds waived the policy provisions excluding coverage for permissive personal use of Daniel's vehicle. If Victoria Lloyds waived the policy's permissive personal use exclusion, the general provisions of the insurance policy would be "reinstated" and Sudderth would arguably be covered.

■ An agent with authority to bind the insurer concerning coverage may waive exclusionary provisions of an insurance policy by a later representation at variance with the written terms of the policy. *See Royal Globe Insurance Co. v. Bar Consultants, Inc.*, 577 S.W.2d 688, 693 (Tex.1979); *New York Fire Insurance Co. v. Reed*, 138 S.W.2d 138 141–142 (Tex.Civ.App.–Amarillo 1939, writ ref'd); *Home Insurance Co. v. Roberts*, 129 Tex. 178, 100 S.W.2d 91, 93 (1937). Summit General Agency, Inc. provided the insurance card to Wood Brothers for distribution to drivers of "leased" vehicles such as Daniel. Victoria Lloyds does not dispute that Summit General Agency, Inc., its attorney-in-fact, had authority to bind it concerning coverage. In response to Victoria Lloyds' motion for summary judgment, Black, Sudderth and Daniel pleaded that Victoria Lloyds waived the policy provisions excluding coverage for permissive personal use of Daniel's vehicle by a later representation in the insurance card that was at variance with the written terms of the policy.

Black, Sudderth and Daniel submitted the insurance card and Daniel's affidavit which stated, among other things, that (1) he was aware that Texas law required him to have liability insurance on his truck for personal and business use, (2) he believed that the information on the insurance card confirmed his understanding that he was purchasing "complete liability insurance" and (3) it was his understanding from the insurance card that the insurance policy covered his truck for business and personal use. The insurance card issued to Daniel does not distinguish between liability insurance for business or personal use. The issuance and contents of the insurance card and Daniel's affidavit raise fact issues concerning whether Victoria Lloyds waived the policy provisions excluding coverage for personal use of Daniel's vehicle by a later representation in the insurance card that was at variance with the written terms of the policy. Therefore, we hold that there are issues of material fact concerning waiv-

---

his other actual use thereof is within the scope of such permission....

**10.** Automobile endorsement TX–06–17 "Truckmen–Gross Receipts or Mileage Basis" provides in pertinent part:

1. With respect to the insurance for **bodily injury** liability and for **property damage** liability afforded by this endorsement the **"Persons Insured"** provision of the policy is replaced by the following:

    *   *   *   *   *   *

None of the following is an **insured:**

(i) any person or organization, or any agent or employee thereof, other than the **named insured** or an employee thereof, engaged in the business of transporting property by **automobile** for the **named insured** or for others under any of the following conditions:

(1) if the **bodily injury** or **property damage** occurs while such **automobile** is not being used exclusively in the business of the **named insured** and over a route the **named insured**

is authorized to serve by federal or public authority....

Automobile endorsement TX–06–21 "Truckmen–Hired Automobiles" provides in pertinent part:

It is agreed that the insurance with respect to **owned automobiles** applies to the maintenance or use, including loading and unloading of **hired automobiles,** subject to the following provisions:

    *   *   *   *   *   *

(d) The insurance does not cover as an **insured,** the owner or any lessee (of whom the **named insured** is a sub-lessee) of **a hired automobile,** or any agent or employee of such owner or lessee, if the **bodily injury** or **property damage** occurs:

(1) while the **automobile** is not being used exclusively in the business of the **named insured** and over a route the **named insured** is authorized to serve by federal or public authority....

er of the policy's permissive personal use exclusion which preclude summary judgment.

### III.

■ Black, Sudderth and Daniel argue that Victoria Lloyds' motion for summary judgment failed to identify or address all of their causes of action. We agree.

Black, Sudderth and Daniel asserted causes of action against Victoria Lloyds for breach of contract, violations of the DTPA and the Insurance Code, negligence, gross negligence, fraud, and breach of duty of good faith and fair dealing. Victoria Lloyds' motion for summary judgment asserted that there were no misrepresentations as a matter of law, that there was no insurance coverage for the accident and that Black and Sudderth had no standing to sue for misrepresentation and fraud. Although the motion for summary judgment stated that it "embraces all causes of action asserted by Plaintiff and Cross-claimants," the motion failed to identify or address the causes of action for violations of the DTPA and the Insurance Code, negligence, gross negligence and breach of duty of good faith and fair dealing or their elements. The trial court granted the motion for summary judgment concerning all causes of action asserted against Victoria Lloyds.

■ Rule 166a of the Texas Rules of Civil Procedure provides that the "motion for summary judgment shall state the specific grounds therefor ..." and that summary judgment "shall be rendered forthwith if ... the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response." TEX.R. CIV.P. 166a. A summary judgment movant may not be granted judgment as a matter of law on a cause of action not addressed in a summary judgment proceeding. *Chessher v. Southwestern Bell Telephone Co.*, 658 S.W.2d 563, 564 (Tex.1983). The movant must establish his entitlement to a summary judgment on the issues ex-

pressly presented to the trial court by conclusively establishing all essential elements of his cause of action or defense as a matter of law. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979). Summary judgment for defendant is proper when the evidence establishes that there is no genuine issue of material fact concerning one or more of the essential elements of plaintiff's cause of action, *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970), or when each element of an affirmative defense to plaintiff's cause of action is established as a matter of law, *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984). However, in order to conclusively establish the requisite essential element or elements, the motion must identify or address the cause of action or defense and its elements. Since Victoria Lloyds' motion for summary judgment failed to identify or address the causes of action for violations of the DTPA and the Insurance Code, negligence, gross negligence and breach of duty of good faith and fair dealing or their essential elements, we hold that the granting of summary judgment concerning these causes of action was error.[11]

For the reasons explained herein, we reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings.

Dissenting opinion by HECHT, J., joined by PHILLIPS, C.J., and GONZALEZ and COOK, JJ.

HECHT, Justice, dissenting.

When Lisa Jeanine Sudderth ran her father's pickup into Randal Black's car she had no idea whether she was insured. In fact, she was not. But her father, C.O. Daniel, believed she was, and he had an "identification card" which his employer had given him that he thought said she was, although it did not exactly say that. So the Court concludes from this that an insurance company which never had any dealings with Sudderth or Daniel should be

---

**11.** As a result of the disposition of the other issues, our consideration of the alleged lack of standing of Black and Sudderth is premature. Thus, we express no opinion on this issue.

put to trial to decide whether it may nevertheless be liable to them and Black for actual and punitive damages for breach of contract, violations of the Texas Deceptive Trade Practices-Consumer Protection Act and the Texas Insurance Code, negligence, gross negligence, fraud, and breach of the duty of good faith and fair dealing. If there is a fact issue in this case, then I question how any claim against an insurance company, no matter how frivolous, can ever be dismissed by summary judgment. I dissent.

Daniel's employer, Wood Brothers, bought a liability insurance policy from Victoria Lloyds covering various trucks used in its business, including Daniel's pickup, which he leased to Wood Brothers. The policy covered Daniel's pickup only when it was being used on Wood Brothers' business. This is the policy Wood Brothers wanted and paid for. Victoria Lloyds gave Wood Brothers a number of small identification cards which it believed Wood Brothers needed to comply with section 1B of the Texas Safety Responsibility Act, TEX. REV.CIV.STAT.ANN. art. 6701h, § 1B (Vernon Supp.1990).[1] Each card measured about 2″ × 4″, referenced a policy number and expiration date, named Wood Brothers as the insured, and stated on the back, among other things: "THIS POLICY COMPLIES WITH THE COMPULSORY AUTO LAWS OF THE STATE OF TEXAS". Wood Brothers gave Daniel one of the cards but did not say anything to him about whether the card indicated that his truck was covered when it was not being driven on Wood Brothers' business.

Daniel and Victoria Lloyds never had any contact until after Sudderth's accident. Victoria Lloyds did not give Daniel the identification card; Victoria Lloyds gave the card to Wood Brothers and Wood Brothers gave it to Daniel. This fact is most important because the statement in the card as a representation by Victoria Lloyds to Wood Brothers and its drivers while engaged in its business was absolutely true. Had Victoria Lloyds made the same representation about this policy to anyone else, it would not have been true. Victoria Lloyds did not make the representation to Daniel; Wood Brothers did. If Wood Brothers had told Daniel that the statement on the card applied to him only while he was driving his truck on Wood Brothers' business, then the statement would have been true. But Wood Brothers did not explain the card to Daniel.

The Court implies that Victoria Lloyds intended that Wood Brothers give the cards to its drivers, suggesting, I suppose, that Victoria Lloyds is responsible for Wood Brothers' failure to explain the cards to its drivers. The Court states: "Victoria Lloyds issued insurance cards to Wood Brothers for distribution to all its drivers". *Supra* at 22. This statement is only half-true: the summary judgment record establishes without contradiction that Victoria Lloyds issued cards to Wood Brothers for distribution to its drivers *for use in their employment.* Specifically, Victoria Lloyds' representative testified at his deposition in response to questions by opposing counsel:

Q. All right. And the purpose of you giving the card to Wood Brothers

(A) the name of the insurer;
(B) the insurance policy number;
(C) the policy period;
(D) the name of the insured; and
(E) the policy limits or a statement that the coverage of the policy complies with the minimum amount of liability insurance required by this Act. . . .

---

1. That statute provides in pertinent part:

(a) On and after January 1, 1982, every owner and/or operator in the State of Texas shall be required, as a condition of driving, to furnish, upon request, evidence of financial responsibility to a law enforcement office of the State of Texas or any subdivision thereof, or agent of the Department, or to another person involved in an accident.

(b) The following evidence of financial responsibility satisfies the requirement of Subsection (a) of this section:

. . . . .

(2) a written instrument issued by a liability insurer that includes:

was to distribute it to the hired vehicles, right?

A. For the purpose of while they worked for Wood Brothers.

Q. I understand your position on that. . . .

There is no basis in the allegations of the parties or the summary judgment record for holding Victoria Lloyds responsible for Wood Brothers' distribution of the identification cards. What if Wood Brothers had given cards to customers or friends, or just passed them out on the street? Would each recipient be entitled to conclude that he was suddenly covered by a liability insurance policy that he had never seen issued by Victoria Lloyds, a company that he did not even know existed? Could anyone who happened to come upon a stray card file a claim with Victoria Lloyds and when it was denied, sue for negligence, statutory violations, fraud and bad faith? In the context of this case, what if Daniel had given the card to Sudderth to use while driving her own car?

I suppose even this Court would have to strain to extend its bearer-bond notion of these simple little identification cards quite that far. The Court's view strikes me a little like holding the State of Texas liable for a driver's negligence because it licensed him to drive, or holding a bank liable to pay a bounced check because it represented that the issuer had an open account. Perhaps that is why the Court repeats that it is the card *and* Daniel's affidavit—each time stressing that *both* must be taken *together*—that raise a fact issue in this case. The Court leaves the impression, although it never clearly states, that the card itself in this case does not raise a fact issue as to whether Victoria Lloyds is liable on the claims asserted.

It is hard to see, however, how Daniel's affidavit contributes to raising a fact issue. It establishes that the premiums for the coverage of his pickup were deducted from his pay, but this shows only that Daniel paid for his own business insurance. Daniel never paid for liability insurance covering the personal use of his truck, and he does not claim otherwise. Daniel asserts that a Wood Brothers employee told him that the company liability policy covered his personal use of his pickup (although his deposition testimony was mostly to the contrary), but he never asserts that Victoria Lloyds told him so, and Wood Brothers' representation, if it was made, is not even alleged to be attributable to Victoria Lloyds. Daniel says he was never told that personal use of his pickup was not covered by the policy, and that if he had been, he would have purchased his own liability insurance; but surely Victoria Lloyds had no duty to go around telling its insured's employees one by one as they came and went from time to time that they were *not* covered by one of its policies. Daniel stresses in his affidavit that he *believed* he was covered by the Victoria Lloyds policy. But how can Daniel's subjective, unexpressed belief, however sincere, alter the fact that he was never insured?

The Court seems to say this: if you pay someone for some kind of insurance and he gives you a card that says you are insured, but you never contact an insurer or an agent and you never see a policy, but you still believe in your heart that you are insured, then you may very well be insured. This Cartesian theory of insurance —"I believe, therefore I am insured"—is not only far-fetched, it is completely unworkable. What are the limits of the coverage the Court thinks Daniel might have? The minimum statutory limits that the card referred to? The limits of Wood Brothers' policy? The limits Daniel wishes he had, or that Black hopes he had? What are the terms of this imaginary policy? The standard terms, whatever those are? The terms Daniel thought he had? At the trial of this case, will the jury be asked to make up some terms and limits and coverages for this made-up policy? Or is it all much simpler? Will the jury simply be asked to award punitive damages against Victoria Lloyds for allowing Daniel to believe he was insured when he was not? The Court does not attempt to answer any of these questions.

The Court reiterates that there are fact issues in this case that must be tried, but I am at a loss to see what they are. The Court mentions two: "concerning misrepresentation of the liability insurance coverage

for personal use", *supra* at 22, and "concerning whether Victoria Lloyds waived the policy provisions excluding coverage for personal use of Daniel's vehicle by a later representation in the insurance care that was at variance with the written terms of the policy", *supra* at 26. These facts are not in dispute. Victoria Lloyds never made any statement to Daniel, and it never made a false statement to Wood Brothers. No basis has been alleged in the pleadings, raised in the summary judgment record, or suggested by the Court for holding Victoria Lloyds liable for Wood Brothers' statements and omissions and Daniel's subjective belief. If Victoria Lloyds should have done something more or different, the Court should say so.

If there are fact issues in this case, could there ever be such a case in which there were not fact issues? How could these facts be changed to entitle Victoria Lloyds to summary judgment? The Court put these very questions to petitioners' counsel. What if Victoria Lloyds had stamped the card, "Not Valid for Personal Use"?

COUNSEL: On the facts of this particular case, that may have done it. But again, we'd have to look at the entire record to see if the conduct of the insurance company's is misleading, because questions of whether or not something is a misrepresentation, or a question of whether it's misleading, or a question of whether it's negligence, is just so inherently an issue of fact that it's hard to ever resolve it by summary judgment....

What if Victoria Lloyds had added to the card something to the effect, "See policy for details"?

COUNSEL: That is exactly the point. The point is, if they had done that, would that conduct have been negligent or not? Would they then have provided enough information to discharge the burden of a reasonably prudent person? That is a question of fact that should be resolved by the trier of fact, not resolved by summary judgment.

Well, then, what if Victoria Lloyds had given Daniel the entire policy, all 27 pages of it? Would that fact entitle Victoria Lloyds to summary judgment? Is there any way to get a summary judgment in a case like this?

COUNSEL: I would be hard pressed—as a lawyer who works on the plaintiffs' side of the bar—I would be hard pressed to fault an insurance company who gave somebody an insurance policy by them saying, well, this policy is confusing so therefore it's inherently misleading. I mean—so if they had just given the policy, I think, I fail to see how that's going to—that's going to be hard to make a misleading argument. *Perhaps they could then engage in other conduct.* And in fact—see, it's not just the language of the policy, it's the conduct: not only the issuance of the card, but the omission to state the fact. It's all that conduct that we are claiming raises a fact issue on the misleading aspect of their transaction.

Petitioners' counsel could not imagine even one scenario in which summary judgment would be proper. Given the Court's view, I cannot either. Unless the Court means to abolish summary judgments against plaintiffs who sue insurance companies in all cases, it should attempt what petitioners have failed—to explain how summary judgment could be granted.[2]

I dissent.

PHILLIPS, C.J., and GONZALEZ and COOK, JJ., join in this dissenting opinion.

---

**2.** The Court calls this concern about the impact of its decision on summary judgment practice speculation and declines to consider it for "obvious reasons". *Supra* at 24. Those unstated reasons must not have been obvious to the Court when it questioned counsel extensively on the subject at oral argument, nor are they obvious to me now. I am not aware that it is improper for the Court to consider the effect of its decisions on the law. Despite the Court's insistence that it has not abolished summary judgments in suits against insurance companies, it does not offer either an example or an explanation of how a summary judgment might be appropriate.